UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. : 12-20885-CR- SCOLA

**UNITED STATE OF AMERICA,**

    Plaintiff,

vs..

**JAMES MATHURIN,**
    Defendants.
_____/

**MOTION TO SUPPRESS IDENTIFICATION**
**AND REQUEST FOR A HEARING**

**COMES NOW**, the Defendant, James Mathurin, by and through the undersigned attorney, pursuant to the Due Process Clause and the Fifth Amendment of the United States Constitution, and moves this Court to suppress all out-of-court identification identifications made of him by several witness based on the photographic display used in this case, as well as any and all anticipated in-court identifications of him by any such witnesses.  In support of this motion, Defendant states as follows:

**COUNT-4, (METRO PCS-I)**

On August 7, 2007, the victim was outside the listed business, when 2 customers entered the store for assistance. victim Deodat stated that he entered the business and walked around the counter to assist the customers, when an unknown black male entered the store armed with a firearm, and had a black shirt wrapped around this face.  The victim described to Detective Dixon (the responding detective) that the subject was a black male, 22 to 25 years of age, stocky

build, 165, tall wearing black jeans and a white shirt, with a black shirt covering his face. A year later the victim,was re-interviewed by Detective Myrtil and identified the Defendant. The victim claimed that he saw the Defendant walking from the BP gas station before (9/9/10 152:16-18), which he never stated to the responding Detective. It shoul be noted that the Defendant was 17 years old when crimes charged took place.

   This Photographic line should be suppress due to the following circumstances:

**1)** Detective Myrtil testified that prior to presenting a photographic lineup to the victim, she instructed the victim to the following, see (Suppression Hr'g. Tr. 207:8-17, Trial 9/3/10 92:4-16).

"A.Yes. I have a standard way of doing things, just because I am getting older and I don't want to forget anything. So it may or not be the person in the robbery that is shown in the line-up. Hairstyle change. Clothing change. So if you see a piece of clothing on somebody, don't pay attention to it. Complexions may be darker or lighter. And, once again I reiterate to them, "Please, look at every single photo. " And once again  I say, "May or may not be the person that robbed you". Please take a look at it."

      But the victim complete disregarded these instruction see (Trial 9/9/10  160:1-11).

"A .Yes, I can. The hair is what gives him away.

"Q. I'm sorry?

"A. The hair is what gives him away.

"Q. You picked the individual out the photo because of the way of the hair?

"A. Yes that's the same hair style that he had.

"Q. But you couldn't see the robber's face?

"A. No

"Q. You are basically identifying him because of the hair?

"A. Yes

    See Detective Dixon testimony on this matter (Trial 9/9/10  177:17-25, 178:1).

"Q .Now, this individual, did he indicate anything to you about the haircut of the guy that robbed him?

"A.The Victim indicated

"Q. We are talking about  Mr. Deodat, correct?

"A. Yes, Mr. Deodat.

"Q. Yes

"A. No, he didn't say anything.

"Q. He didn't  say that the haircut stood out for any reason or anything like that?

"A. No.

**2)** The victim never saw the defendant face (Trial 9/9/10 160:8-9).

**3)** The victim stated that the subject had a shirt covering his nose and mouth and ear-to ear (Trial 9/9/10 158:3-4).  But Detective Myrtil stated otherwise see (Suppression Hr'g. Tr 228:17-21).

"A... Then a few minutes later he goes into business and the same two guys that he saw came in, and then the third guy came in, but this time he explained to me that he had a shirt partially covering his mouth, and I am describing where the shirt came above the mouth".

**4)** To the victim every individual in the photo array is dark complexion See (Trial 9/9/10 177:11-16).

**5)** The victim does not remember anything that he told police (Trial 9/9/10 159:1-9),  what was said before given the photographic lineup (Trial 9/9/10 157:18-20).

**6)** The victim does not remember anything as to the event that led up to the date that the detectives showed you this photo lineup ( Trial 9/9/10 161:18-21).

This photographic identification is unreliable and should be suppress.

### COUNT-6 (HELLO CELLULAR HUT-I)

On August 7, 2007, two victims were robbed Paola Barroeda and Ericka Arrivllago. They were behind the counter when there was a customer browsing the store, looking to purchase cellular phones.  At that point a black male entered the store armed with a firearm.  Victim, Barroeda described the subject as a black male, medium completed 17 to 21 years at age, height 5'11, 185 to 195, low haircut, wearing black pants and a white T-shirt covering his face. Victim Arrivillago stated the same thing.  Eight months later  Det. Myrtil present both victims with a photo-lineup and they were able to pick-out Defendant's photo from the photo line-up.

This photographic line up should be suppressed for the following reasons:

**1)** Both victim never stated in the original report how far the shirt was covering his face.

**2)** Ms. Barroeta testified that the subject had a shirt covering his mouth see (Trial 9/14/10 112:8-9).  But Ms. Arrivllago stated that the subject did not have his face covered and the subject had on bandanna but it was on his neck.  See (Trial 9/14/10 18:11-15).

**3)** At trial, Ms. Barroeta stated it had been three years and she  could not "remember" the description of the subject.  See (Trial 9/14/10  112:21-22).

### COUNT-10,  (MAX COMMUNICATIONS)

On August 18, 2007, a subject armed with a black gun entered the business and demanded money and ordered everyone on the floor.  After the robbery Det. Alfonso spoke to the victims.

Some time thereafter, Det. Myrtil, presented a photo line-up to one of the victims and the Defendant was identified as the robber. (Trial 9/14/10 68:1-6).

This photographic lineup should be suppress due to the following circumstances:

1. The victim testified at trial that she was in shock (Trial 9/14/10 68:17-21), went into panic and was hyperactivity (Trial 9/9/10 77:9-17), and had problem breathing (Trial 9/14/10 78:7-10).

2. The victim testified that she originally told officers that she could not identify anybody on the day of the crime ( August 18, 2007) see (Trial 9/14/10 79:19-25, 80:1).

3. The victim told the original officers that she could not identify anyone because she was in shock. (Trial 9/14/10 82:13-18).

4. The victim was allowed to review the surveillance video with the Detective Myrtil prior to looking at the photo line-up. (Trial 9/14/10 80:9-15).

This photographic lineup is unreliable and should be suppress.

## COUNT-17 (HELLO CELLULAR II)

On August 21, 2007 three unknown suspects entered and robbed this store. The only descriptions provided by the victim of the subjects 3 black males, dark skinned. Nine months later Detective Angulo and Detective Myrtil presented the witness Tomas Hutchins with the photographic array (Suppression Hr'g. Tr. 178:4-8) from which the witness identified the Defendant. (Suppression Hr'g. Tr. 180:22-25, 181:1).

This photographic lineup should be suppress due to the following circumstance:

1. The victim testified that he didn't remember that he first told the police that the subjected was dark completion, or his height.( Trial 9/16/10 34:13-22).

2. The victim identified the Defendant because of his goatee, which the detective told them to disregard those features. (Trial 9/16/10 36:19).

3. The victim testified he did nor remember anything that he first told investigators (Trial 9/16/10 25:15-21, 27:22-15, 28:1-4, 36:13-14, 39:19).

4. The victim never gave a statement to the original detective.

   This photographic lineup is unreliable and should be suppress.

### COUNT-26 (DURANGO)

On December 11, 2007, the victim was robbed by a dark skinned individual (Trial 9/9/10 79:17-25) The Defendant was not allowed to question the victim on the instruction that Det. Bennett claimed to have given to the victim. ( Trial 9/9/10 81:9-14).

This photographic lineup should be suppress due to the following circumstances:

1. The victim himself testified at trial the Defendant did not fit the description that he gave to officers (Trial 9/9/10 82:14-22).

2. The victim was never advised of any instruction prior to reviewing the line-up. (Trial 9/9/10 81:16-19).

3. The victim can remember the Defendant as the subject, but cannot remember how the responding officer looked like (Trial 9/9/10 79:11-16), or the Detective that spoke to him. (9/9/10 80:23-25, 81:1-4).

   This photographic lineup is unreliable and should be suppress.

## ARGUMENT

In **O'Brien V. Wainwright, 738 F.2d (11th Cir. 1984)**, the court required that 5 factors be evaluated in determining whether the identification was reliable; these factors are: (1) the opportunity of the witness to view the suspect at the time of the crime, (2) the witness degree of attention, (3) the accuracy of the witness prior description of the suspect, (4) the level of certainly demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. **O'Brien, 738 F.2d at 1141.**

For the most part, the aforementioned victims provided testimony that conflicted with the detectives testimony concerning he photographic line-ups. The lack of corroboration and presence of contradiction, leaves a reasonable suspicion that the victims were "coerce", "persuaded" or "instructed" into identifying the Defendant as the subject. **In Neil V. Biggers, 409 US 188, 93 S. Ct. 375, 34 L Ed 2d 401 (1972)**, if there has been a subsequent in-court identification is inadmissible only if there is a "a very substantial likelihood of irreparable misidentification and "with the deletion of 'irreparable,'[that test]*** serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself." See <u>Manson V. Brathwaite</u> **(1977)**. Under <u>Manson</u>, the factors to be considered in evaluation the likelihood of misidentification "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

Here, the Defendant was identified months, and even years after the robberies had occurred. The introduction of these photographic line-ups is a violation of the Defendant's due process. A defendant possess a due process right to exclude identification testimony resulting from an unnecessarily suggestive identification procedure conducive to irreparable misidentification. **Stovall V. Denno, 388 U.S. 293, 301-02, 87 S. Ct 1967, 1972, 18 L. Ed. 2d 1199 (1967)**. A conviction based on eyewitness identification following a pretrial identification is invalid if the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood or irreparable misidentification. **Simmons V. United States, 390 U.S 377, 88 S. t. 967, 19 L. Ef. 2d 1247 (1968).** When determining the admissibility of eyewitness testimony, the primary evil to be avoided is very substantial likelihood of misidentification. "It is the likelihood of misidentification which violates a defendant right to due process... **Neil V. Biggers**.

Only when evidence "is so extremely unfair that is admission violates fundamental conceptions of justice. " **Dowling V. United States**, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990)(internal quotation marks omitted), have we imposed a constraint tied to the Process Clause See, e.g., Napue V. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173 3 L. Ed. 2d 1217 (1959)( Due Process prohibits the States's "knowing use [of] false evidence, "because such use violates "any concept of ordered liberty.").

## **CLOSING**

In the case at bar, the testimony of the aforementioned the victims, concerning the photo line-up identification are totally unreliable and extremely unfair. How can the victims be able to identified months later the Defendant, if according to their sworn testimony at trial was the subject had a shirt covering his face (Trial 9/9/10 158:3-4); or, could not see the robber face

(Trial 9/9/10 160:8-9); or, cannot remember any details of the robber description. (Trial 9/9/10 159:1-9, Trial 9/14/10 112:21-22, Trial 9/16/10 25:15-21, 27:22-15, 28:1-4, 36:12-14, 39:19-20); or, the victim was in shock and could not identify anyone (Trial 9/14/10 82:14-22); or, the victim gave conflicting testimony as to what the robbery had on his face (Trial 9/14/10 18:11-15, 112:8-9)

Relevant factor are "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to the lineup, failure to identify the defendant on a prior occasion and the lapse of time between the alleged act and the identification," **United States V. Wade, 388 U.S, 218, 87 S. Ct 1926 18 L. Ed. 2d 1149 (1967).**

It is also undisputed that the victims before viewing the photographic line-ups completely ignore the police instruction. (Government Motion 107:6). The Constitution, Supreme Court decisions indicated herein, protects defendants against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit. Constitutional safeguards available to defendants to counter the government's evidence include the Sixth Amendment rights to counsel, **Gideon V. Wainwright, 372 U.S, 335, 343-345, 83 S. Ct. 792, 9L. Ed. 2D 799 (1963)**; compulsory process, **Taylor V. Illinois, 484 U.S, 400, 408-409, 108 S. Ct. 646 98 L. Ed. 2d 798 (1988)**; and confrontation plus cross-examination of witnesses, **Delaware V. Fensterer, 474 U.S. 15, 18-20 106 S. Ct 292, 88 L. Ed 2d 15 (1985)**(per curiam). Apart from these guarantees, we have recognized, state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining

the reliability of the evidence presented at trial.  See **Kansas V. Ventri**, **556 U.s. 586, 594, n., 129 S. Ct. 1841, 173 L. Ed. 2d 801 (2009)** ("Our legal system... is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses").

The detectives that testified at trial, told the victims to disregard the facial hair, clothing, and skin color.  Ironically, in the case at bar, none of the victims told police, in their initial statements, that the robber had any such particular characteristic concerning facial hair, clothing or skin color.  It should also be noted that the victims never identified the defendant in open court, and the only argument the government present was:

> "The defendant has been incarcerated since 2007, so his skin color changed."(emphasis added).

The photographic line-ups presented during trial, should be suppress for they are unreliable See **United Stated V. Walls**, **237 F. App'x 599, 601 (11th cir. 2007).**

## CONCLUSION

**WHEREFORE**, the Defendant's motion should be granted and the court should suppress the aforementioned photographic line-ups.

Respectfully Submitted,

By: /s/ Israel Jose Encinosa
Israel Jose Encinosa, Esq.
FBN 435007

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served/ filed with the Clerk of Court of the Southern District of Florida and all attorneys of record via transmission of Notices of Electronic Filing generated by CM/EFC, this 8th day of April , 2013.

By: /s/ Israel Jose Encinosa

ISRAEL JOSE ENCINOSA, P.A.
ATTORNEY AT LAW
9100 S. Dadeland Blvd., Suite 1500
Miami, Florida 33156
Tel. (786)404-3983
Fax.(305)259-1285
Cel.(305)804-6976